NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-3115

ROBERT J. DI PAOLO,

Petitioner,

v.

UNITED STATES POSTAL SERVICE,

Respondent.

Robert J. Di Paolo, of El Dorado Hills, California, pro se.

Carrie A. Dunsmore, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With her on the brief were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Kenneth M. Dintzer, Assistant Director.

Appealed from: Merit Systems Protection Board

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-3115

ROBERT J. DI PAOLO,

Petitioner,

v.

UNITED STATES POSTAL SERVICE,

Respondent.

Petition for review of the Merit Systems Protection Board in SF0752080041-I-1.

_____

DECIDED:  December 14, 2009

_____

Before RADER, ARCHER, and PROST, <u>Circuit Judges</u>.

PER CURIAM.

Robert Di Paolo appeals a decision of the Merit Systems Protection Board ("MSPB" or "Board") sustaining his demotion from the position of Postmaster to Supervisor in the Lincoln Post Office, Sacramento District, Pacific Area.  The demotion was based on four charges:  (1) inappropriate stamp purchases, (2) receipt of alcohol on postal property, (3) failure to follow instructions, and (4) inappropriate use of information technology.

In his brief to this court, Mr. Di Paolo raises several challenges to each of the four charges.  Although some of Mr. Di Paolo's arguments are persuasive as to the severity of each charge individually, they do not refute the administrative judge's ultimate

conclusion that all four charges, when considered together, justify the penalty imposed. Because the penalty imposed was demotion, as opposed to removal from service, the U.S. Postal Service ("USPS") need not show that Mr. Di Paolo was unfit to serve or supervise. The USPS need only show that the totality of the four charges establishes that Mr. Di Paolo's performance did not comport with the exemplary level of responsibility associated with the position of Postmaster. Because the USPS met this burden, we agree that Mr. Di Paolo's demotion promotes the efficiency of the service. We therefore <u>affirm</u> the decision of the MSPB.

DISCUSSION

Mr. Di Paolo has served in the USPS for over twenty-eight years. He acquired the position of EAS-21 Postmaster of the Lincoln Post Office in 2005. After around two years of service as Postmaster, Mr. Di Paolo was demoted to EAS-17 Supervisor of Computerized Forwarding Operations Services. Mr. Di Paolo challenged this adverse action before an administrative judge. Although the administrative judge accepted some of Mr. Di Paolo's arguments, he sustained at least in part the four charges against Mr. Di Paolo and found that demotion was an appropriate penalty. Mr. Di Paolo then petitioned for review before the MSPB. The Board agreed with the administrative judge and affirmed the USPS action. Mr. Di Paolo now appeals to this court. We have jurisdiction over the appeals from the MSPB pursuant to 5 U.S.C. § 7703.

The standard of review in an appeal from a decision of the MSPB permits reversal where the decision was arbitrary, capricious, an abuse of discretion, not in accordance with law, procedurally defective, or unsupported by substantial evidence. 5 U.S.C. § 7703(c); <u>Yates v. Merits Sys. Prot. Bd.</u>, 145 F.3d 1480, 1483 (Fed. Cir. 1998). We

We discuss each of the charges underlying the adverse action and Mr. Di Paolo's arguments below.

Charge 1

Charge 1 involved a violation of Section 317.3 of the Post Office Handbook F-1. Section 317.3 requires a customer signature for all credit card purchases. On several occasions, Mr. Di Paolo used a customer credit card, with the customer's consent but without the presence or signature of the cardholder, to purchase large amounts of stamps on behalf of the customer. Charge 1 initially included an allegation of intimidating employees into making such purchases, but the intimidation component of the charge was unfounded and subsequently withdrawn. The charge as sustained by the administrative judge was limited to inappropriate purchasing or instructing employees to do so. The administrative judge found that even without the intimidation component of the charge, Mr. Di Paolo's conduct was in violation of Post Office rules.

Mr. Di Paolo raises several challenges to Charge 1 on appeal, including (1) the penalty should have been mitigated based on the fact that Mr. Di Paolo's previous supervisor permitted him to process credit card charges in the manner described in Charge 1, (2) demoting Mr. Di Paolo does not promote the efficiency of the service where the USPS has not shown or alleged harm resulting from Charge 1, and (3) that the administrative judge erred in allowing the USPS to base its assessment on an accusation of intimidation that was later withdrawn by the USPS and discounted by the administrative judge.

We agree with Mr. Di Paolo that the permission of his supervisor, lack of harm to the USPS, and withdrawal of the intimidation component of the charge would reduce the

severity of Charge 1. We do not agree, however, that the administrative judge abused his discretion in failing to mitigate the penalty based on the reduced severity of Charge 1, because demotion is already a mitigated penalty and the penalty was based on all four charges, not just Charge 1.

Mr. Di Paolo submits the testimony of Mary Burkhart in support of his argument that stamp purchases have been made by employees at other facilities without adverse action.[1] The testimony of Ms. Burkhart establishes that customer credit cards have in the past been used without the cardholder's presence to make large purchases on behalf of the customer.

The USPS's charge against Mr. Di Paolo, however, does not turn on the fact that the cardholder was not present at the time the card was charged, but that no signature was obtained from the cardholder. The USPS's credit card policy is that a customer must personally sign his receipt. Without a cardholder signature, any charge to the card can be disputed and the merchant will be financially liable if the issuing bank dishonors the transaction.

Ms. Burkhart does not mention whether a signature was obtained during the customer transactions she describes in her affidavit. Her testimony is not inconsistent with a policy of obtaining a customer signature, as she explained that after charging the card a receipt for the purchase was personally delivered to the customer along with the purchased stamps. There is no evidence that a courier did not return with a signed copy

---

[1] The USPS opposes the submission of this testimony as it was not before the court below. We accept Mr. Di Paolo's assertion that the testimony constitutes new and material evidence that was not previously available. We therefore consider it part of the record on review.

copy of the receipt. Thus, Ms. Burkhart's testimony does not demonstrate one way or the other whether the adverse action taken against Mr. Di Paolo was inconsistent with the USPS's response to the use of customer credit cards under other circumstances.

Charge 2

Charge 2 was based on a violation of Section 665.26 of the Post Office Employee and Labor Relations Manual. Section 665.26 prohibits all employees from "hav[ing] or bring[ing] any container of beer, wine, or other intoxicating beverage into any Postal Service facility, regardless of whether or not the container has been opened." Mr. Di Paolo arranged on at least three separate occasions for personal wine deliveries to the Lincoln Post Office. Following his second receipt of wine on Postal Service property, Mr. Di Paolo was informed that such wine shipments were a violation of the manual. The record shows that Mr. Di Paolo received one additional shipment of wine following the meeting at which he was informed of the Post Office's alcohol policy.

Mr. Di Paolo does not dispute that he arranged for and received personal shipments of wine in violation of the manual. He asserts that the containers were not open and that he placed the containers in his personal vehicle immediately upon receiving the shipments. His challenge to Charge 2 alleges that the violation was de minimus, and did not warrant the adverse action taken. Mr. Di Paolo argues that other employees received similar shipments and did not suffer similar penalties.

We disagree with Mr. Di Paolo that Charge 2 was de minimus and warrants no consideration in evaluating the adverse action taken. Charge 2 is part of a larger set of charges, Mr. Di Paolo's exemplary leadership position as Postmaster obligates him to a higher standard of conduct than other employees. Mr. Di Paolo knowingly violated the

alcohol policy. We conclude that the administrative judge did not err in considering Charge 2, along with the three other charges, to support the penalty of demotion.

Charge 3

Charge 3 was based on Mr. Di Paolo's failure to follow instructions communicated during a financial review of the Lincoln Post Office. Auditing of the office revealed over sixty items in financial trusts and suspense accounts needing corrective action. The reviewers found that those problems arose due to inadequate internal controls and oversight attributable to Mr. Di Paolo. In response, Mr. Di Paolo stated that he implemented an action plan to correct the problems identified. A follow-up review was conducted several months later. The follow-up review again revealed many deficiencies, the majority of which were identified as repeat problems documented in the previous review. The reviewer found that the persisting problems were the result of Mr. Di Paolo's failure to take action to correct the deficiencies.

Mr. Di Paolo, his supervisor, and an analyst held a meeting at which they conducted a line-by-line examination of the follow up review and discussed ways in which to correct the problems identified. Following the review, Mr. Di Paolo stated that he understood the review, the deadline by which the problems must be resolved, and verified that he would take necessary measures to resolve them. Mr. Di Paolo's supervisor responded with a memo to Mr. Di Paolo reiterating the tasks that Mr. Di Paolo was supposed to complete and the deadline by which they were to be completed. Mr. Di Paolo does not dispute that he failed to complete these tasks.

Mr. Di Paolo raises several challenges with respect to this charge, including (1) that the memo did not characterize any of the tasks as "instructions," (2) that Charge 3

did not specifically identify what instructions he failed to follow, precluding Mr. Di Paolo from fully preparing his defense, and (3) that the tasks he was instructed to complete were unreasonable.

Mr. Di Paolo failed to meet the objectives communicated in two reviews, a line-by-line meeting, and a memo. Although the memo and charge could have been more explicit in identifying Mr. Di Paolo's incomplete tasks as "instructions," the language of the memo and charge were not so vague as to prevent Mr. Di Paolo from understanding the mandatory nature of the assignments, or from formulating a meaningful defense to Charge 3. Additionally, Mr. Di Paolo's argument that the assignment was unreasonable is not persuasive. Mr. Di Paolo assured his supervisor that he was capable of addressing the problems identified, and he never gave indication otherwise. He never asked for assistance or extra time to complete the tasks. The administrative judge did not err in finding that Charge 3 supports the penalty of demotion.

## Charge 4

Charge 4 was based on the forwarding of inappropriate emails from a work email account to employees within the USPS and recipients outside of the USPS. The charge initially included improper personal use of a work computer for more than a "limited" amount of time, as well as receiving and viewing inappropriate emails. The administrative judge found that the accusation of personal use for more than a limited amount of time was not supported by evidence and that receiving and viewing inappropriate emails was not Mr. Di Paolo's fault. Mr. Di Paolo cannot control the receipt of inappropriate emails, and since many of the emails had innocuous subject lines, he cannot be blamed for viewing them. The administrative judge sustained Charge 4 only

Charge 4 only with respect to forwarding certain sexually inappropriate emails from his work account to recipients both within and outside of the USPS.

Mr. Di Paolo challenges the sustained component of the Charge 4 by arguing that he was the only employee involved in the circulation of these emails against whom any adverse action was taken. He cites testimony from a witness that none of the other employees involved in sending the emails at issue received any discipline. He also points out that all of the disputed emails were sent prior to Mr. Di Paolo's assignment to the position of Postmaster.

Even if Mr. Di Paolo's arguments with respect to Charge 4 were persuasive, they would not defeat the ultimate conclusion that the totality of Charges 1, 2, and 3 as sustained support the penalty of demotion.

## CONCLUSION

Although the administrative judge rejected some portions of some of the charges against Mr. Di Paolo, he ultimately sustained all four charges in some form. The totality of the four charges as sustained establishes that Mr. Di Paolo's performance did not comport with the exemplary level of responsibility associated with the position of Postmaster. We therefore affirm the decision of the MSPB.

## COSTS

Each party shall bear its own costs.